# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

_____
                                  :

In re                              : Chapter 11

                                  :

**DOMINION VENTURES, LLC,**     : Case No. 11-12282 (CSS)

                                  :

                **Debtor.**     : Hearing Date: November 9, 2011,

                                  :             at 3:30 p.m. (ET)

_____:

### MEMORANDUM OF LAW IN SUPPORT OF CREDITORS/EQUITY HOLDERS OBJECTION TO DEBTOR'S MOTION PURSUANT TO SECTIONS 105(A) AND 363(C) OF THE BANKRUPTCY CODE FOR ORDER AUTHORIZING: (A) CONTINUED USE OF CASH MANAGEMENT SYSTEM AND PROCEDURES; (B) MAINTENANCE AND CONTINUED USE OF EXISTING BANK ACCOUNTS; AND (C ) WAIVER OF CERTAIN <u>OPERATING GUIDELINES RELATING TO BANK ACCOUNTS</u>

Gene Mehmel, a Creditor and Equity-holder and Dante Corporation; Kokomo Indiana, LP; Pensco Trust Company Custodian FBO Jose P. Olivaerz (Dec'd), Bene: Robert J Olivarez; Robert Olivarez Trust UWO Jose P. Olivarez; Krazy For Kokomo, LLC; Kokomo PA, LP; Morton & Phyllis Weinstock; George Lilly; Tim & Bonnie Rakes; Peter Kruse; Higher Calling Investments, LLC; and Agape Investments, LLC, Equity -holders in all of the Series constituting Dominion Ventures, LLC (hereafter, "Objectors" or "Equity Holders"), hereby submit this Memorandum in support of their objection to the Debtor's Motion Pursuant to Sections 105(A) and 363(C) of the Bankruptcy Code.

## <u>PRELIMINARY STATEMENT</u>

Through the instant motion Debtor's Manager, Ralph Cochran and Chief Financial Officer, James K. Luchs, Jr., demonstrate that they continue to place their personal interests first and foremost to that of the creditors or the Debtor's estate. Their respective violations of the

Operating Agreements for the Company and the distinct Series for each property "invested in" by the Company, (hereinafter, "the operating agreements"), makes $709,776.54, (64.8% of the $1,094,839.54, listed as "Creditors Unsecured Nonpriority Claims," in the total box at page nine of Schedule F), the individual obligations of Cochran and Luchs and another $170,553.78, (15.6% of the total) suspect as legitimate "debts, liabilities, obligations and expenses incurred" by the Company, or any of the Series.

The operating agreements, the pertinent portions of which are set forth in Addendum "A" hereto, :

(1) limit enforceability of "the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to a particular series of the Company" to "the assets of such series only[.]" *See,* Recital, Section 2.01, and Section 6.01 of the operating agreements, at Addendum "A"*; and*

(2) provide for the Manager associated with a Series to be liable to the Company, such Series or such Member(s) who have been damaged as a result of the Manager's "fraud, deceit, gross negligence, willful misconduct or a wrongful taking[.]" *See,* Section 5.03, Section 5.06, Section 6.01 and Section 6.05 of the operating agreements, at Addendum "A."

The equity security holders are aware, as a result of a derivative action filed in November, 2007,[1] that during the time period of January 1, 2007 - December 31, 2007, Cochran and Luchs:

(1) diverted at least $468,800.00 of equity security holder monies invested in the Kokomo Series, to their use and/or to fulfill personal charitable pledges they made. Said diversions are in violation, *inter alia,* of Sections 2.01, 5.03, 5.06, 6.01, 8.02, 8.04, 8.09, and

---

[1] Mehmel v. Luchs, et al., Delaware Chancery Court, C.A. No. 3408-VCN.

2

8.11 of the operating agreements as well as various representations contained in the offering memorandum;

(2) diverted from Series, other than Kokomo, to the Management Series[2] "fees" of $60,000.00, in excess of the amount of total fees the offering memoranda represented the Management Series would be entitled to receive;

(3) diverted, under the guise of "loans payable" and/or "notes receivable" from the Series, $123,675.00, to the Management Series, in violation of Sections      of the operating agreements; and

(4) used the foregoing diversions to underwrite $126,900.00 in checks from the Management Series to Geneva Entrepreneurs, Inc., a company owned by Cochran and Luchs which employed family members to performed  "office management services," in violation of the operating agreements and the various representations contained in the offering memoranda.

 Without the long established checks and balances put in place under the operating guidelines relating to bank accounts set forth in the United States Department of Justice, Office

---

[2] The founders and sole members of Dominion Ventures, LLC (the "Company"), are Ralph Cochran, (31.66% ownership interest); James K. Luchs, Jr.,(31.66% ownership interest); Sidney Henriquez, (5.02% ownership interest); and Gene Mehmel (31.66% ownership interest). The various Series established for each property in which the Company "invested" was managed by a separate series - the Management Series, whose sole members were Cochran, Luchs, Henriquez and Memel.

Neither the Company nor the Management Series provided any funds for the "acquisition" of  the properties for which each of the Series were created.  The Management Series did receive a substantial interest in each Series for "putting the deal together"and a management fee for operating the property.  The method of calculating the management fee was set forth in the offering memorandum used in raise funding from the equity security holders.

Each Management Series member had the same interest in the Management Series as they had in the Company.  Cochran was the Manager, Luchs the Treasurer.

In the late spring of 2007, shortly before Cochran and Luchs began engaging in conduct which constitutes "fraud, deceit, gross negligence, willful misconduct or a wrongful taking," they barred Mehmel from access to any and all information concerning the conduct of the Company and the Series.

of the United States Trustee, District of Delaware Operating Guidelines for Chapter 11 Cases,

Debtor's manager and chief financial officer will be able to continue their practice of diverting

Debtor's assets to their own use and will be able to destroy whatever evidence they have not

already destroyed relating to their prior misconduct.  Such an event would prevent the equity

security holders from being able to pursue any and all recourse which they have against the

Debtor's manager and chief financial officer.

    The misconduct consists of acts of  "fraud, deceit, gross negligence, willful misconduct

or wrongful taking' engaged in by Cochran and Luchs, as the following facts established during

a two day evidentiary hearing held before an arbitration panel consisting of Pamela S. Tikellis,

Esquire; the Honorable Vincent Bifferato; and  James S. Green, Sr., Esquire.[3]

---

[3]Per the operating agreements and the specific terms of the Chancery Court Order directing the matter to arbitration, the arbitration is binding.  Because Cochran and Luchs refused to (1) produce documentation requested in discovery and (2) appear at their duly noticed depositions, the full extent of their wrongdoing is unknown.  Consequently the arbitration panel, after two days of hearings, and in accordance with 6 Del.C. § sec. 18-305(a)(1), which provides for the production of all books and records necessary to have "true and full information regarding the status of the business and financial condition of the limited liability company," directed Cochran and Luchs to turn over all books and records of the Company, including, *inter alia,* computer files.  Cochran and Luchs have steadfastly ignored orders from the arbitration panel to produce the Company's books and records.  The latest order, dated March 17, 2011, stated:

> The Arbitrators have previously ordered Defendants to produce all books and records at Defendants' expense within 90 days of April 12 [2010].  The Arbitrators' again ordered the production to Plaintiffs on June 24, 2010, with production to be made on or before July 15, 2010.  It appears that the Arbitrators' Orders have not been fully complied with.  It is hereby ORDERED:

> Within ten (10) days of the date hereof, Defendants shall produce all documents and things listed in Paragraph 18(a) of Plaintiffs' Motion dated August 9, 2010.  The documents and things shall be produced at the place or places where they are kept in the normal course of business.

Cochran and Luchs delayed another forty-five days, using the time to remove the documents and things to be produced from the place where they were kept previously in the

## **FACTUAL BACKGROUND**

On July 16, 2007, the Management Series took $50,000.00 from the Kokomo Series, for closing costs.[4]  Yet the Kokomo offering memorandum states "A one-time fee of about 1% but not more than 2% of the purchase price will be paid to reimburse the management company for any expenses incurred during the due diligence and acquisition process."[5]  There is no documentation of any reimbursable expense for the closing of a transaction which involved nothing more than a "land contract."  The equity security holders asked Cochran and Luchs during discovery to provide documentation to support this specific $50,000.00, transfer from the Kokomo Series to the Management Series and none was ever produced, nor was any explanation for not producing the documentation offered.  The only appropriate inference is that no costs were incurred.  Indeed, while being cross-examined on this transaction Mr. Luchs first tried to mislead the arbitration panel on what the Kokomo Series offering memorandum  stated and tried to assert that the monies were for a "finders-fee."  Again, there is no documentation supporting the existence of a finders fee; the recipient of the monies, Mr. Strittmatter was present at the hearing and was not called by the defendants to support Mr. Luchs.

At the time the $50,000.00 was transferred from the Kokomo Series to the Management Series, the Management Series operating account had a negative balance in excess of $3,000.00.

---

normal course of business.  Thereafter their counsel sought to withdraw from the case on the basis that they had not been paid.  On June 27th, counsel's request to withdraw was granted by the Chancery Court.  As the equity security holders continued to press Cochran and Luchs to comply with the March 17th Order, the instant bankruptcy was filed, staying all efforts to uncover the extent to which the equity security holders have been injured.

[4] The following references are to the documents introduced at the evidentiary hearing held before the arbitration panel.  Plaintiffs' Exhibit 3a and Plaintiffs' Exhibit 6a.

[5]Plaintiffs' Exhibit 7, page 15 of 22.

Immediately following the $50,000.00 transfer, Cochran and Luchs transferred $16,000.00 to Geneva Entrepreneurs, Inc., an entity owned by Cochran and Luchs.[6]  Luchs testified that Geneva provided management services.  Assuming that Geneva would be entitled to the management fees the Kokomo offering memorandum represents as going to the Management Series, the $16,000.00 payment exceeds that which is represented to be the allowable fee.   The Kokomo offering memorandum states, in relevant part, "Management Fee (recurring): A 5%-8% management fee of the Gross Operating Income will be paid monthly to Dominion Ventures LLC, Management Series."[7]  The Kokomo Series general ledger for 2007 shows that for the time period of January 1, 2007 thorough July 16, 2007, total Gross Operating Income (rents collected and sale of one lot) was $63,881.73.[8]  An eight percent fee on Kokomo's Gross Operating Income for the relevant time period is $5,110.54.

Also out of the $50,000.00 another $25,000.00, was transferred immediately to Thomas Strittmatter (Dynamic Realty Inc.), care of his attorney, Mike Jablonsky, for "repayment of loan."  Again no documentation exists showing that the $25,000.00 was an obligation incurred for the benefit of the Kokomo investors.  Even more galling is Mr. Strittmatter's receipt of $175,000.00 for "loan repayment to Dynamic Realty" on July 17, 2007.[9]  Once again, there is no evidence that any such loan obligation existed or arose from some benefit bestowed upon the

---

[6]Plaintiffs' Exhibit 3a and Luchs testimony.

[7]Plaintiffs' Exhibit 7, page 15 of 22.

[8]Plaintiffs' Exhibit 6a, starting with the entries under "1002 National City - 984521617" for the dates 01/02/2007 - 7/16/2007, and continuing with entries under "1003 National City - 758380441(old)" for the dates 01/03/2007 - 03/14/2007.

[9]Plaintiffs' Exhibit 6a, 7/17/07 entry, "Check Transfer   Michael Jablonski   Loan Repayment to Dynamic Reality [sic] 2210 Loan Payable: Due Dynamic Reality [sic]   - $175,000.00"

6

Members of Kokomo.

In the space of two days, Cochran and Luchs wrongfully transferred $225,000.00, out of the Kokomo Series, and into the Management Series when there is support for the transfer of only $5,110.54.

Less than one month later Cochran and Luchs again demonstrated their (1) disregard for the provisions of the limited liability company agreements of the Company and the various Series, (2) conflicts of interest, (3) propensity for wrongful taking and (4) deceitfulness. On August 12, 2007, Cochran and Luchs held two meetings. The first of the meetings was a meeting of the Dominion Ventures, LLC Management Series members, which consisted of the Cochran and Luchs, Henriquez and Gene Mehmel.[10]  All four members were then members of the Board of Trustees of the Stratford Classical Christian Academy, Inc.[11]  At the meeting, Cochran proposed that the Management Series lend the Academy the sum of $150,000.00 for a term of one year at an interest rate of 2%.[12]  Cochran or Luchs represented that the money for the loan would come from remortgaging Dominion Ventures, LLC Norwood Series, the members of whom were the three Cochran, Luchs, Henriquez, Mehmel and Susan Gargano, who was the Dominion Ventures, LLC VP for Investor Relations.[13]  Based upon this representation, which meant that no one other than insiders of Dominion Ventures, LLC, would have an asset encumbered, Mehmel voted in favor of granting the loan.[14]  The second meeting, held in the

---

[10]Mehmel testimony; Luchs testimony.

[11] *Id.*

[12] Mehmel testimony, Plaintiffs' Exhibit 88.

[13] Mehmel testimony.

[14] *Id.*

offices of Dominion Ventures, LLC, immediately after the Dominion Ventures, LLC

Management Series meeting, was an ad-hoc meeting of the Stratford Classical Christian

Academy, Inc. Board of Trustees.  The stated purpose of the meeting was the "preparation for

the upcoming YWCA property sale closing scheduled for August 15th, 2007."[15]  According to

the minutes of the meeting, at the top of the agenda was the "School Construction Project Loan

Program: • The Dominion Promissory Note Loan Offer with balloon payment was reviewed for

approval."[16]   Also according to the minutes, "it was moved, seconded and carried to approve the

Promissory Note loan offer received from Dominion Ventures."

On August 13, 2007, despite the representations of Cochran and Luchs as to the source of

the money for the loan to the Academy, Cochran and Luchs transferred $200,000.00 from the

checking account of the Kokomo Series to the checking account of the Management Series and

then transferred $150,000.00 to the bank account of the Stratford Classical Christian Academy.[17]

Of the remaining $50,000.00, $16,000.00 went to Geneva Entrepreneurs, Inc., even though the

Management Series was only entitled to a management fee of $518.00 ($6,475.00 Gross

Operating Income x 8%), for the time period of July 17, 2007 - August 13, 2007.[18] Of the

remaining $34,000.00, $30,000.00 went into the Management Series Money Market Account and

$4,000.00 went to pay fees to two of the sons of the Martin Dawson, Sr., the pastor and religious

---

[15]Plaintiffs' Exhibit 88a.

[16] *Id.*

[17] Plaintiffs' Exhibit 6a & Plaintiffs' Exhibit 3a.

[18]Plaintiffs' Exhibit 6a, starting with the entries under "1002 National City - 984521617"
for the dates 7/17/2007 thorough 8/13/2007.

leader of the Stratford Orthodox Presbyterian Church.[19]   The Stratford Classical Christian

Academy, is the church school of the Stratford Orthodox Presbyterian Church.[20]

In the ensuing two weeks, August 17 - 31, 2007, the only source of cash into the

Management Series to cover the checks written out came from the Money Market account into

which the $30,000.00 was deposited on August 13, 2007.[21] The total amount of dollars

transferred out of the Money Market account and back into the Management Series checking

account totaled $27,747.91.[22]  Of that amount $2,832.60, went to the children of Rev. Dawson,

James K. Luchs, Jr. and Susan Gargano, and $9,000.00 is represented as having gone to pay an

obligation of the Dominion Ventures, LLC Delco Storage Series.[23]    The $9,000.00 transaction

is described as "08/30/2007   Check [no number recorded] Loan fro mgmt to pay for mo?"[24] The

use of Kokomo monies to pay, supposedly, an obligation of Delco Storage, is an unequivocal

violation of Article VIII, Section 8.02 of all of the limited liability company agreements.

The August 13, 2007, transfer of $200,000.00 of Kokomo's investors' money was a

wrongful taking.  The transaction was recorded in the general ledger as a gain on the partial sale

of the Management Series, LLC's interest in the Kokomo Series.[25]  In reality the Management

Series was wrongfully transferring investors' capital contributions to its coffers, and reducing the

---

[19] Plaintiffs' Exhibit 3a entries for the dates 8/13/2007- 8/17/2007.

[20] Mehmel testimony; Luchs testimony.

[21] Plaintiffs' Exhibit 3a.

[22] *Id.*

[23] *Id.*  Gargano's daughter is Lauren DeSimone.

[24] Plaintiffs' Exhibit 3a, second entry for 08/30/2007.

[25] Plaintiffs' Exhibit 3a, first entry for 08/13/2007.

investing members' capital contributions in violation of Article VIII, Section 8.04 as set forth in the  Limited Liability Company Agreement of Dominion Ventures, LLC , the Limited Liability Company Agreement of Dominion Ventures, LLC Management Series  and the Limited Liability Company Agreement of Dominion Ventures, LLC, Kokomo Series.  In relevant part  Article VIII, Section 8.04 states:

> a member associated with a Series shall not receive from the property of such Series any part of its Capital Contribution with respect to such Series until all liabilities of such Series . . . have been satisfied[26]

(*See,* full text at Addendum "A")

The defendants were members of the Kokomo Series and through the time period of their wrongful taking of Kokomo's investing members' capital contributions, the Kokomo Series had a liability to Hubert L. & Jacquelin A. Dunithan, in the amount of at least $1,616,200.00 due on January 1, 2009. [27]

In addition and more importantly the transaction was conducted without the knowledge and agreement of the equity security investors of the Kokomo Series, in violation of Sections 8.08, 8.09, 8.11 a, b, & d, and 8.12 a.    (*See,* full text at Addendum "A")

The August 13, 2007 wrongful taking of the Kokomo Series investing members' $200,000.00, was not the last time that Cochran and Luchs engaged in wrongful taking from the investing members' capital contributions. By October 3, 2007, Hue Dunithan, the title holder to the Kokomo Series property, had concluded that the Cochran and Luchs had perpetrated a

---

[26] Plaintiffs' Exhibits 1 & 4, at Section 8.04 - Withdrawal or Reduction of Members' Contributions to Capital,  page 23.

[27] Plaintiffs' Exhibit 27 & Dunithan Deposition Transcript, page 18, line 1 through page 23, line 11.

"ruse"on him back on April 26, 2007 in order to secure a $125,000.00 contribution from Duithan for the Academy  and he informed Cochran and Luchs that he was preparing "a lawsuit against Dominion, the school, Ralph Cochran, and Jim Luchs."[28]  On October 10, 2007, Cochran and Luchs wrongfully transferred $20,000.00 from the Kokomo Series to the Management Series. The Kokomo Series general ledger entry for the transaction reads as, "Loans Payable: Due Dominion Ventures Mgmt Series."[29] and the Management Series general ledger entry for the transaction reads as, "Repayment of Loan Other income: Gain on Sale of Stock - Kokomo."[30] Discovery requests to Cochran and Luchs seeking documentation of a loan related to this specific entry were ignored.  The inherent inconsistency in posting the transaction as a loan payable in one general ledger and then as "income: Gain on Sale of Stock" in another general ledger gives rise to question whether both ledgers were created contemporaneously with the transaction. Indeed, it was approximately a month latter that Gene Mehmel, as a member of both the Management Series and the Kokomo Series,  requested to see the books and records of both entities and was told no.[31]  At the November 29th Dominion Ventures Board meeting, which was taped and played before the arbitration panel, CFO, Jim Luchs and the CEO, Ralph Cochran tell Mehmel that the books and records are not available.  Under direct examination Luchs stated that the records couldn't be made available because "they weren't in order" and under cross examination he acknowledged that they were in "disarray."

Of the $20,000.00 wrongfully taken on October 10, 2007, $12,000.00 was immediately

---

[28]Dunithan Deposition Transcript, page 35, lines 10-11.

[29] Plaintiffs' Exhibit 6a, second entry for 10/10/2007.

[30] Plaintiffs' Exhibit 3a, first entry for 10/10/2007.

[31] Mehmel testimony.

transferred to Geneva Entrepreneurs, Inc.[32]  This transaction was just nineteen days after the

Management Series took $8,911.19, from the Kokomo Series as administration fees.[33]  The

$8,911.19 fee is closer to the real management fee permissible as cited in the Kokomo offering

memorandum.  As previously stated, the management fee permissible is 5%-8% of the Gross

Operating Income of the Kokomo Series.  The Kokomo Series income tax return reports Gross

Operating Income of $89,700.00[34], eight percent of which is $7,176.00.

What was done with the money wrongfully taken by Cochran and Luchs  and given to

Geneva Entrepreneurs, Inc., is a question that has not been answered because Cochran and Luchs

refused to respond to equity security holders' discovery requests pertaining to Geneva and failed

to appear for their depositions.

As Luchs testified when called as an adverse witness during the equity security holders'

case in chief, the Stratford Classical Christian Academy sent a cashier's check in the amount of

$125,000.00, to Hue Dunithan in order to avoid the threatened lawsuit.  Despite the fact that he is

the CFO of Dominion Venture, LLC and was the treasurer of the Academy in 2007,  Luchs

couldn't account for why the check sent to Mr. Dunithan was a cashier's check, nor whose

account it was drawn upon. The check is dated November 10, 2007 and the letter of enclosure

was dated November 9, 2007.[35]  On November 5, 2007, the Kokomo Series general ledger

shows a $5,000.00 wire to Dominion Ventures, LLC Management Series which is recorded as,

---

[32] Plaintiffs' Exhibit 3a, second entry for 10/10/2007

[33] Plaintiffs' Exhibit 6a, entry for 9/21/2007.

[34] Plaintiffs' Exhibit 8.

[35]Plaintiffs' Exhibit 32 and Plaintiffs' Exhibit 31, respectively.

"Loans Payable: Due Dominion Ventures Mgmt Series."[36]  The same transaction is recorded in

the Management Series general ledger as, "Other income: Gain on Sale of Stock - Kokomo."[37]

Again, the inherent inconsistency in posting the transaction as a loan payable in one general

ledger and then as "income: Gain on Sale of Stock" in another general ledger gives rise to

question whether both ledgers were created contemporaneously with the transaction. Further

adding to this question  is the fact that the general journal entry which reduces the Kokomo

Series investing members' capital contributions does not include this $5,000.00.  On the same

day as this transfer Cochran received $4,800.00 for "three months office rent."

On the very next business day, Monday,  November 8, 2007, the Management Series

transferred $4,000.00 from the Kokomo Series, with both entities showing this transaction as a

repayment of a loan to the Management Series.  There is nothing in the general ledgers

supporting the existence of such a loan.[38]    Also on November 8, 2007, Geneva Entrepreneurs

received a transfer of $3,500.00 from the Management Series.[39]

On November 20, 2007, the defendants had the  Kokomo Series wire $18,675.00, to the

Management Series.   Again both entities show this transaction as a repayment of a loan to the

Management Series, but there is nothing in the general ledgers supporting the existence of such a

loan.[40]

---

[36] Plaintiffs' Exhibit 6a, first entry for 11/05/2007.

[37] Plaintiffs' Exhibit 3a, first entry for 11/05/2007.

[38] Plaintiffs' Exhibit 3a, second entry for 11/08/2007; Plaintiffs' Exhibit 6a, only entry for 11/08/2007.

[39] Plaintiffs' Exhibit 3a, first entry for 11/08/2007.

[40] Plaintiffs' Exhibit 3a, second entry for 11/20/2007; Plaintiffs' Exhibit 6a, second entry for 11/20/2007.

The transfer of $18,675.00 was included in the reduction of the Kokomo Series investing members' capital contributions in violation of Article VIII, Sections 8.04, 8.08, 8.09, 8.11 a, b, & d, and 8.12 a, although the general ledgers do not identify it as "Other Income: Gain on Sale of Stock - Kokomo." Cochran and Luchs reduced the foregoing capital contributions by $238,675.00, consisting of the August 13, 2007, $200,000.00 wrongful taking; the October 10, 2007, $20,000.00 wrongful taking; and the November 20, 2007, $18,675.00 wrongful taking.[41]

Luchs has admitted that these capital reductions were not done with the knowledge or permission of the Kokomo Series investing members.[42]

Lastly, there is a $23,800.00 transfer for Kokomo to the American MHP Holding Series for repayment of loan for which there is no documentation.

All tolled, Cochran and Luchs, through the foregoing transfers to the Management Series, American MHP Holding Series, Thomas Strittmatter, and Geneva Entrepreneurs, Inc., wrongfully transferred a minimum of $468,800.00, of Kokomo Series investing members monies. They did so through deceit. Their actions left the Dominion Ventures LLC, Kokomo Series in a position where it could not meet its obligations under the Land Contract entered into on December 1, 2006 with Hue Dunithan. As a result the contract has been defaulted upon and each and every one of the Kokomo Series investing members has lost 100% of their investment.

Other Series have been subjected to similar unsupported transfers in violation of the operating agreements.

Section 5.06 of the operating agreements prohibits indemnification of Cochran and Luchs under these circumstances. The second largest creditor listed by Cochran and Luchs is Cross &

---

[41]Plaintiffs' Exhibit 87, possibly marked at the hearing as Plaintiffs' Exhibit 95.

[42] Luchs testimony during cross examination.

Simon. LLC, the law firm which represented them individually in the derivative action.  The amount owed Cross & Simon is $144,000.00.  This obligation is solely that of Cochran and Luchs.

Finally, although this Chapter 11 proceeding was commenced in July, 2011, the Debtor has been significantly late in filing this Motion.

## **CONCLUSION**

In light of the history of self-dealing, and the lack of financial transparency illustrated in its prior course of business, the Objectors herein assert that the foregoing facts give rise to the belief that the Cochran and Luch's request to maintain its existing cash system is one which provides absolutely no assurance that the "property" of the estate will used in any reasonable view as "the ordinary course of business."  *Charter Co. V. Prudential Ins. Co. Of Am. (In re Charter Co.),* 778 F.2d 617, 621 (11th Cir. 1985).   As such, the Objectors hereby request this honorable Court deny the Motion, and grant such other relief as may be just and equitable.

Respectfully submitted,

Dated: October 31, 2011          /s/ John F. Thomas, Jr.        (DE ID#3324)
                                  JOHN F. THOMAS, JR., ESQUIRE
                                  64 Read's Way
                                  New Castle, DE 19720
                                  (302) 221-3278 jftjr@mac.com
                                  Attorney for Equity Security Holders
                                  & Creditors Listed Above

                                     and

                                  John F. Innelli, Esquire (*pro hac vice pending*)
                                  1818 Market Street, Suite 3100a
                                  Philadelphia, Pa 19103
                                  215-975-2875

15